We have three appeals to hear. Council are familiar with your cases. You don't have to explain the background to us. We know what the cases are about. We've read the briefs, the authorities cited in the briefs, at least portions of the record. You should feel free to get straight to the heart of your argument. You have limited time this morning. You're not going to waive anything that's been raised in your brief. You need to get to the points that you want to leave us with. We're probably going to have some questions. Please pay attention to the traffic lights. When the red light shines, it's time to wrap it up. If you're from the court, you won't lose any rebuttal time. If that's something you have, you can finish your answer, but do be respectful of our time. We'll begin this morning with United States v. Green and United States v. Chambers. Mr. Eberhardt. Good morning. May it please this honorable panel, I am Eric Eberhardt on behalf of Appellant Leslie Green. My brief raises four enumerations, but I plan to address primarily two of the issues unless, of course, this panel directs me to specific matters of interest. The first issue to discuss is the admission at trial, the co-defendant's inculpatory jailhouse letter. Mr. Green and I do not contest that there's sufficient evidence to establish some general conspiracy between Mr. Green and that co-defendant, that co-defendant being Mr. Chambers. I stand here to bring to the court's attention that my client had actually withdrawn from that conspiracy when the letter was written and when the letter was taken into custody. Did it differ from the findings, though, that specifically went through the withdrawal factors that this court has set out and determined, as a matter of fact, that there had been no plain and clear, I think is the test that we've set out, withdrawal? Judge Locke, yes, the court did, but I think that's where the errors occurred in this particular matter, and I think this court has the ability to look at that and re- They would be errors of fact, right? They would be errors of fact. Well, application of fact. There's no argument about the facts, but the application of fact to the issue of withdrawal, and that's where Part of it was that, A, your client did not give a full and fulsome statement to the police when he did sit down with him, and that was part of the basis. In fact, as to who did the shooting and what the nature of the major crime was for which he had been charged, he did not come forward and give faithful testimony. And then later on, the other two co-conspirators saying everything I said was bunk and a lie, I know there's some talk about whether that was done voluntarily or not, but based on that, the district court said that there is no real withdrawal. Why is that not at least a sufficient factual basis to make that conclusion? A couple of reasons, and I think you hit on one of the important reasons is that the court relied on the suggestion of the renunciation statement significantly. But even the witness that the government called as one of its primary witnesses indicated that even he was forced into signing a renunciation letter. He did, of course, but your client didn't plead guilty like him, didn't cooperate like he did, and in fact went to trial and asserted his innocence, or at least is not having been found guilty. So why is that not a sufficient basis for which to, that plus the fact that when he did say that your client sat down with the police, he did not give a complete statement, is that not a sufficient basis to find a line of drama? To address that, the witness we're talking about also testified in relation to my client that both of them, not just he, but both of them were forced into that renunciation. That renunciation happened almost two years after the inculpatory letter was written. With regard to the issue of full disclosure to law enforcement, the only distinction between what was said by the witnesses about the event and what my client told the government in his interviews was that who was the actual shooter. Not who was present, not how it played out, not who the parties were, but who the actual shooter in the matter was. And I believe that that doesn't change the fact that there was disclosure that took him outside of the conspiracy. In fact, the letter itself. Doesn't the withdrawal have to be a clean and permanent break? I think that we are facing a different situation that's not been addressed before in that we've got... Have we said that it has to be a clean and permanent break? Yes, Chief Judge Pryor, we have, but we also have not... ...signed a statement explicitly disavowing his proper. How can we say that's satisfied? Because of the circumstances surrounding the renunciation, the fact that there were threats, the fact that he was targeted, that would change his circumstances to make that renunciation less than whole, I guess, is the way I would phrase that. So that's what we're asking this panel to look at and review in regard to... ...standard of review that we apply to this. So on evidentiary admission issues, we usually apply a use of discretion. But just to follow up on what Judge Luck asked, I mean, is this a fact finding that the district court made that said, look, as a matter of fact, I find that you did not withdraw from the conspiracy, and do we review that for clear error? I do believe that's correct. I think, though, in relation to that, it is a consideration of everything in application to the law with regard to what constitutes a withdrawal. So the other issue, the admission of the letter is abuse of discretion. The subsidiary factual findings to support that are reviewed for clear error. You agree that there's no dispute about what the underlying facts are, but only really what the inferences to draw from them. Is that right? How to apply the law to those facts, yes. How to apply the law to those facts. Yes. Well, I don't know about that. I mean, I just, the way I understood your argument is you were challenging the district court's determination that there was not a complete withdrawal, which would be a fact question, right? The district court made certain determinations of fact, and the question is, do those facts support a showing of withdrawal legally or not? So that would be our argument there. You think the overall question of withdrawal is like a legal question? Correct. Yes. If I may move to the second issue, and it is in relation to the admit of YTAP evidence in this particular matter, and then just directly to the point, Judge Brasher, I am aware of your opinion in Stowers. I believe we find ourselves in a different environment when we're talking about what happened in this particular instance. We're dealing with digital evidence, which was actually processed outside the jurisdiction. So here's a couple of questions I have about that. One is, you know, I don't think I understand how stuff moves through the telecommunications network. You probably don't understand that. You know, I'll just guess no one in this courtroom understands that exactly. It seems like most courts have said, look, because of that, just wherever the listening is, that's where the YTAP took place. And here, I think it's undisputed that the listening, you know, the actual observation of the recording was in Georgia. That's undisputed. And yes, Judge Brasher, you are correct. But I think if we go back to the start of the entire process in the 5th Circuit before we became the 11th Circuit, the Turk case speaks directly to the fact that it's a combination of where the intercept or the device that's being intercepted is first attached to, as well as the place where it's listened to. Turk is concerned with where it's heard, right? I would say differently. I think Turk is concerned with the oral acquisition by the device and the hearing of the communication by the person or persons responsible for the recording. That's a direct quote from Turk. And to add to that, Turk also says that the oral acquisition is potentially the combination of those two things, and we can't eliminate that first step. It just happens to focus on the second step. Don't you clarify on Shields? Because Shields sort of picks up the ball from Turk. And there, it's pretty clear to me, I'll read it to you, it says under this definition, that is the definition of intercept, each communication in question was intercepted twice. One oral acquisition occurred when the agents heard the conversations being transmitted by radio, and the other involved the tape recording and occurred at the time the recording was made, not when the persons listened to the tape. In other words, there are two separate and independent interceptions under the statute, right? And I agree with that to a point. Again, I don't... Why do you agree with that on the mark of the target? Well, because both of those satisfied the jurisdictional issue. Here, that first step would not have satisfied the issue we raised. The fact that, I guess it's really the second one, the second part of it that you were describing, Judge Luck. So, you mentioned my opinion in Stowers. So, this is something that the Stowers opinion said. It said, under Georgia law and consistent with Title III, an interception occurs both at the listening post where the call is heard and at the location of the targeted phone when it makes or receives a call. Does that quote from Stowers resolve this issue? It's certainly something the court or this panel could hang its hat on. I'm asking the court to look at the specifics of this instance in regard to digital transmission being the level four, level five type of communication that is routed and processed. So, essentially, it's converted from digital to oral outside the jurisdiction. And that's where the issue lies. Thank you. My name is Addison Gant. I'm here on behalf of Philmont Chambers. We're asking this court to vacate Mr. Chambers' convictions primarily because the district court abused its discretion when, in the eleventh hour, it replaced standby counsel because of a conflict of interest and then denied a continuance. We believe that . . . The problem is you've got to overcome the manipulative conduct of your client, right? So, I think that is something that would be taken into account in these other cases where standby counsel was on the case, had been able to prepare, or there was an attorney on the case, and there was some kind of delay to get a new attorney. I think . . . I have a complaint here, though, where the facts are as I understand them. And correct me if I'm wrong on the facts. That your client, from day one, was clear that I would not cooperate, will not cooperate, will not talk with my standby counsel, the one who had been there for the year. And then the new person comes in and asks for more time. Right. In other words, your client had no interest in cooperating and working with standby counsel. How is that . . . does that prejudice him when new standby counsel comes who says, I'm in the same position the other standby counsel is in? So, two things. I think the key point here is the conflict of interest. I think if that were not in this case, I think I would agree with you pretty much wholeheartedly is that his actions before trial would have interfered with the ability of his counsel. The conflict came up, as I understand it, at the point at which the witness was . . . that the government listed the witness as a cooperator there. But at that point before that, there was no conflict of interest. Right. Right. So, I think at that point, all the way up to there . . . The conflict was from . . . two days after arraignment, there was a FREDA hearing. Your client represented himself. At that point, he refused to cooperate with standby counsel for a year. Standby counsel leaves. The conflict says, Judge, I've got to get out of the case. New standby counsel comes in. That person is in the same boat as the other person. Not exactly because the record, whenever she is removed right before the conflict, shows that she was at least preparing somewhat. She was reviewing the discovery on her own. She said that she had reviewed the 302s. She said that she had not prepared as if she were going to try the case in the sense that she did not have the crosses prepared or an opening facts of the case. I think that his actions certainly would have hampered the ability of an attorney to adequately represent him. But the fact that there was a conflict of interest and a new attorney came in, that completely changes the scenario because I think that fact makes it impossible for Mr. Chambers' new counsel when he comes in the case and he is asking for a continuance. As the government points out, he doesn't point to evidence that could have been presented that would have changed it. And he couldn't do that because he didn't know it. He asked the district court on the morning of opening statements to appoint a standby counsel as his counsel based on the advice of his father that to do so would delay the trial. I don't know that that is ever a finding that the district court makes. That recording is played. I don't think, we disagree with the interpretation the government makes that if you read the transcript of it, he pushes back and says no, she can't come in on the case because initially... The fact of the matter, the situation we found that Mr. Chambers found himself in on the morning of August 1st when he requested counsel was entirely of his own making. It was clear that he had his calculation for months have been delay, delay, delay. His efforts have failed, failed, and failed. And this one was a blatant obvious error to delay again. That's at docket entry 479 at pages 37, 38. That's after hearing the recording on the motion for new trial. Yes, I think that is a finding, Judge. Yes, I'm saying like the interpretation of the call itself. I think everything beforehand, yes, that's exactly... If you interpret it in a way that the district court did, that is a reasonable interpretation that has a finding of fact, how can we then say that reasonable interpretation is wrong and we must adopt a different reasonable interpretation? I think... So really the dispute comes in is that the district court contradicts itself when it says I believe this is a genuine request for an attorney. I think if the court really believed that this was nothing but a delay tactic, what should have happened is he said you authored your predicament, you're now going to represent yourself. Instead, what happened is Mr. Chambers was given an attorney who knew nothing about the case. And so that really is what changed it. I think in every other instance, there's not a case like this one where standby counsel was appointed because of a conflict, knew nothing about the case. In every single case since I did an R briefs and the government's briefs because I can't find a case on point, counsel had time to at least prepare to know something about the case and then was in a position to require that next showing of what, if you need more time, what would you have done that would have changed it? Chambers' counsel couldn't do that because they didn't know the case. The government goes to... I think we understand. Yes, Judge. So you've saved a minute for rebuttal. Let's hear from Mr. Walker. Good morning, Your Honor. May it please the Court. Stuart Walker for the United States. With respect to Mr. Green's challenge to the admission of the 2020 jails letter, I think the court has put its finger right on it. He is challenging a timing effect. I have some questions about some different issues. I'd like to go over with you. I'll talk about the issue and then the question, okay? Sure. The first one I want to ask is about the JOA. There's a JOA argument made by Mr. Green, I believe, regarding the RICO conspiracy. Is there anywhere in the record that you can point me to where a motion for a judgment of acquittal was made either at the close of the government's case, the close of all evidence? Yes, Your Honor. At the end of all the evidence, the district court brought up the motion. He said, I don't want to sandbag anybody. Does anybody have any post-trial motions? And he went to each defendant and said, each one of them said, we make a Rule 29 motion. And the court then denied them each. Not as specific, just... Oh, yeah, no argument with respect to it. That's right. And so the court said, I deem those to have been made at the close of the government's case in chief and then renewed at the close of all the evidence. He just sort of did a blanket denial, defendant by defendant. So it's preserved. No argument was made regarding any particular count and any particular element. That's correct. That's correct. All right. I want to discuss some of the sentencing issues.  And specifically the, what I'll call the merging or the double jeopardy issue. Do you agree, first of all, that the district court here made, picked option, I'll call it option two, the option presented by the government because that was the option that was presented by the government. In other words, is your reading of the record that before the government sort of jumped in, the district court was ready to do option one, which was to fold in the Vicar into the 924J, which would have given him the option to sentence to something less than life on that count. That, I'm sorry. And at that point, the government jumped in and said, Judge, if you do that, we may have a problem between the 924J count and the 924C count. And that would take one of those counts out also. And we ask that you instead fold in the 924J into the Vicar. That's exactly how it unfolded. And you agree that the, sorry, the district court picked that option because of what the government, how the government laid that out. I think it did. I mean, I think what we said is if you. . . Did he make a preliminary determination on the record? Yes. He made a preliminary determination about what he was going to do and he treated both the defendants the same. When we point. . . So. . . I'm sorry. I'm already aware it's the same. Okay. You know, beforehand he was thinking of doing it both for Browner and for Mr. Chambers. Chambers. And afterwards decided to do it differently for Ms. Browner than he did for Mr. Chambers. That's correct. Okay. If I believe, assume I believe that Julian has decided the issue of whether 924J and 924C are a double jeopardy violation, and assume that I read it as saying that they are not, they can be charged and sentenced separately and it does not violate the double jeopardy to do so, is that error of the district court to have relied on that on that erroneous reading or that erroneous understanding presented by the government such that we would have to send back for the district court to exercise its discretion without that erroneous understanding? I think taking your assumption, but I would like an opportunity to address that. Okay. Okay. Okay. But on your assumption, I think then you would have to say, okay, the government told the district court that it was about to do something that was unconstitutional, and the district court said, okay, let me go the other way. So this sentencing was infected with that decision. So I agree with you to that point. All right. All right. So let's, and I appreciate that. Okay. All right. Now let's go to the part that I know you want to talk about, which is what Julian actually held or didn't hold. Tell me why you think Julian is not holding, and by holding I mean not just the actual bottom line, but the necessary reasoning for deciding that, did not decide the issue of whether 924J and 924C would create, charged and sentenced together would create a double jeopardy issue. So a couple of points. We'll start with the proposition that a case can only hold as far as its facts present, and any statements that are not tailored toward the facts presented are dicta. That's kind of black letter law on this court's precedence on precedence. Now, it's a straightforward submission as to why that's dicta. Jermaine Julian was not charged with a 924C count at all. He was charged with two 924J counts, and each one was associated with a predicate. One was a predicate crime of violence. One was a predicate drug trafficking crime. So there was no double jeopardy challenge because there was no question about cumulative punishments for a 924C and a 924J. The court made its discussion on the double jeopardy thing in the process of rejecting the government's argument, but the sole question there was whether J offenses were required to run consecutively to the underlying predicate crime. The government made an argument that the reason why we have to decide the way we're arguing for is because if you did it this way, it would lead to that result, and we would explicitly reject that argument of the government. Is that not part of the court in reaching the decision that it did? I don't think it is, and I'll give you what I think is the best evidence for that. If this court takes a look at the Supreme Court's decision in Laura from a couple terms ago, Laura adopted Julian's holding on the pertinent question about consecutiveness or concurrence, okay? And in the process of that, the government made what has been its long-term argument that that would pose a double jeopardy problem. The Supreme Court said, we take no position on that. In fact, even assuming the government's right, it's not inconsistent. So what I would say is that the Supreme Court, faced with the same argument, didn't find it necessary to its rationale or its holding. They said, we don't take any position on that at all because we don't have to. You don't think that the fact that we explicitly did take a position on it because we did think that it was important to address in order to reject that means that we did? In other words, that doesn't mean that we did. I don't. You're saying that we didn't do. I understand that, Judge Luckin. I don't mean to suggest the panel didn't think it was necessary to fully explain and articulate the foundation for it. As Your Honor knows, Judge Newsom for the Court wrote last year in an opinion, you joined the Files decision. The necessary to the decision is kind of a slippery concept. It's hard to know exactly how to apply it and the cases kind of go all over the place. But I think if you repair back to the basic rule that any language in an opinion that is not tailored to the facts of the case can't make a holding. In fact, Chief Judge Pryor, you said back in 2007 in Ingram v. Commissioner for Social Security, what it does is the holding, not what it says because opinions don't make binding precedent, decisions do. And our submission is that the decision of the court was that J offenses are not required to run consecutively full stop. Let me ask this. Wouldn't it be the case that if the district court thinks that it might be a constitutional problem and it just wants to avoid it, that that's an exercise of its discretion? I think that's probably one way to look at it. I think that's probably one way to look at it. I mean the... It might say, maybe it is, maybe it's not. I'll avoid it. Sure. That's not what happened though, right? It bought the government's position and decided, because of that, I am going to exercise my discretion the other way as to one defendant. The judge did not come out and say, I endorse what the government is saying, but after we pointed out the potential... Well, I think the question is to establish that. I mean, I think the record, and I'm not trying to quibble on that point. I stand by what I said earlier. Let's assume Julian is not holding. Okay. Let's just assume it's persuasive. We can consider afresh. Okay. Let's assume that, considering it afresh, I think there's a double... It's not a double-edged sword. Would that put us in the same position? Let me see if I understand. If you think that, considering it anew, Congress has authorized cumulative punishments for a C and a J... I think you're wrong. I think the government's position was wrong at sentencing. Okay. Does that put us in the same boat, that the district court exercises discretion based on a legal error? If you view it that way, maybe. If you view it the way Chief Judge Pryor, I think, is positing, maybe it's a permissible exercise of discretion. If I... I just... Maybe I'm confused about what the double jeopardy issue is here, but I thought the district court exercised its discretion, let's assume it did that, in a way that was favorable to the defendant. Well, that's our position. Let's start back... How did it hurt the defendant for the district court to do what it did? What they're complaining about is, what Mr. Chambers is complaining about, is that he is subject to life in prison under the Vicar Count in Charge 2. If the government had come to sentencing and not said a word, he would have been sentenced to mandatory life under Vicar. So, I mean, we were trying to eliminate punishments. Let's go through the two options that you presented. Sure. Option one was we are going to fold in Vicar into 924J. If that were the case, on now the merge count, there would have been an option for something less than life. Now, whether he would have gotten life or not is a separate issue, but there would have been an option of less than life. By doing it the way you suggested, by folding it into the Vicar Count, the 924J into the Vicar Count, the district court had no discretion at that point. There was only one sentence on the merge count, and that is life, right? That's right. One is better for the defendant, even though the result may end up being the same, and that gets to harmlessness, not the issue that we're talking about. And exactly the other is less good for the defendant, right? That's right. But let me, if I could just push back on this. This Court has precedence to say when you have a lesser and a greater included issue, where you can't have punishments on both, there's no, the Constitution doesn't prescribe that. In fact, you leave it to the district court. Presuppose that there's a double jeopardy issue, right? I mean, the only reason you're proposing these options is because either one, it's just do we eliminate two counts or one count? So if there is a double jeopardy issue, you would eliminate none of the counts, and he would have gotten a higher sentence, right? Right, right. That's right. So if we were to completely agree that this was an open question and that we could say that there's no double jeopardy problem at all, the sentence would have been exactly the same thing as what he got? That's right. Okay. That's right. So then, Your Honor, if your mind... Excuse me, Your Honor. Okay, I'm sorry. Sure. We're confusing something here. There is a double jeopardy issue. Everyone agrees there's a double jeopardy issue between Vicar and 924J. That's not an issue, right? Everyone agrees. I think that's right. Okay. The only thing we're saying is there is secondary double jeopardy issue, that if we merge Vicar into 924J, does that then create a second double jeopardy issue? Which is what Julian speaks to, or not.  But that's the one we're talking about here, and that's the dispute, right? But that's the primary double jeopardy issue. Everybody agrees there is no dispute that one count of Vicar or 924J had to be merged into the other. Nobody appears to be challenging that. Okay.  Okay. I guess I want to understand why the Tenth Circuit, in its view of this same issue in Casados, is wrong in its textual reading of the statute. And the premise of my question is, you're not arguing with us that the quote-unquote clarification should be applied retroactively here or not. You're just saying... We're not, right. You're not even arguing with us. You're simply saying that, as a textual matter, without the clarification, apply retroactive, that the best reading of this statute is that the father was entitled to restitution for lost wages, right? Right. We think the clarification amendment doesn't change what the law was before. It clarifies it, as Congress said. But we think it only illuminates what already was the law. And we cited the case in our brief that this Court has adopted that principle, where Congress comes after there's a circuit split to make a clarifying amendment. It doesn't change what the law was. Whether it's a clarifying amendment, Congress doesn't get to tell us whether something's clarifying or not. We get to decide for ourselves because that deals with retroactivity. Congress can say it's clarifying, but whether it actually is or not is a question for the courts as a matter of law. And so the question is, you haven't argued to us that we should treat this as a clarifying amendment that should be applied retroactively or that it's a substantive amendment that is only prospective. You're simply saying it's just a matter of how we should interpret the statute as it is, right? It's an interpretive principle that flows from this Court's presence. I'm not asking you to apply the amended statute to conduct that happened before. When the courts are divided, we have said, as a matter of precedent, and Congress comes in and picks the side, we treat that as a clarification. That's right. And further, you treat it as not having changed what the original meaning was but just only clarifying or illuminating, however you want to characterize it. It's a clarification. That's correct. So we're just asking the Court to draw its normal interpretive principle that it has adopted before. We're not asking for the application of the amendment. So there is no... Assume we're without the clarification. Tell me why you think the best reading is that the father was entitled to lost wages. Well, the text of the statute says, in the case of a victim who is deceased, a family member may assume the victim's rights under the MVRA. The victim's rights, one of which is to be compensated for lost income for attendance at proceedings related to the crime. Not the father's right to his own lost income? In other words, the statute says, you sort of skipped a part, which is first is the victim is entitled to lost income. Right. Then if the victim is not there, is dead, is murdered, a parent, a guardian, someone gets to substitute in and gets the rights that the victim would have had. Let me, if I can just explain why I think that doesn't make any sense as an interpretive matter. If the family member of the decedent can come in and only recover the decedent's lost income, the dead victim did not lose any income in attending a proceeding. So it's not the only thing that the victim is allowed to do. No, it's not. It's not a lot of things. Right. The parent wouldn't have been able to get to have those things. But when it comes to lost income, which is at issue here, it doesn't make sense to say that the parent can only get the income that his deceased family member would have gotten at his job, which he didn't miss because he was dead and didn't attend any proceedings. So I just think it doesn't make sense as applied to this component of recovery. It doesn't make sense. I mean, for example, like if the sentencing, often restitution hearings are put off, if the victim somehow died, attended trial, lost income, and somehow passed away afterwards, a parent would be entitled to that, to stand in their stead, would they not? I think they might be. They might be in addition to their own lost income. That, under what I think might be the best reading. Can I indulge with one other area of question? Sure. I appreciate it. Thank you. So let's assume for a moment we don't reverse on the Vicar 924J issue. I want to ask about the 924C sentence. Okay. Because here the defendant was sentenced to 10 years on the 924C count. Right. Do you agree that that was the intent of that by the district court was to sentence for use of a firearm or discharge, I should say, of the firearm? Well, I think the best we can tell from the record is the PSR said it was a mandatory minimum because of the discharge. The district court adopted that without change, as they often do. I think it's a fair inference from the record that he thought he was required to. And you agree that there's no jury finding here as to that? Correct. In fact, there's a jury finding of only one thing and not for another thing, right? With respect to the 924C, there's a finding of use and carry. Right. But my point is that on a plain error view under the fourth prong, where we're concerned about miscarriage of justice, and that's what the Supreme Court has said we're trying to do under the fourth prong, it's not a miscarriage of justice. When he was convicted. But McKinley seems to be a little different here, and this is what I want to ask you about. So McKinley, there, there was no finding at all one way or the other. Right. And, in fact, the indictment in that case cited the brandishing statute. And so what we said there was where the jury's hold is based on the indictment. The indictment indicates brandishing. There's no other contrary finding here. It's not contrary to justice to the sentence there where the evidence is overwhelming. Here, though, we seem to have a jury finding specific as to one thing. How is it in the interest of justice for us to impose a sentence that otherwise would clearly violate the Constitution under the Apprendi line of cases? Because the finding under 924C is inconsistent with the conviction of Vicar murder through the use, the discharge of a gun. The jury convicted him. The only theory of death for Rodriguez Rucker was that he was shot four times with a .40 caliber handgun. That's the only theory on which the government proceeded against Chambers. He was convicted of that. So it's a case in which the use and carry and not the discharge finding on the 924C is arguably inconsistent. But as the Court knows, you can have inconsistent verdicts. And what the Supreme Court has said is you've got to give effect to the conviction. And the conviction here was only that he shot the guy with a pistol. And what I'm saying is under the fourth prong of plain error, it's not a miscarriage of justice to allow Mr. Chambers to be sentenced for ten years when the overwhelming evidence was that he's the shooter, he discharged the gun. Even if you are taking those as inconsistent in the sense of how could it be that he didn't discharge the gun under 924C, but he committed murder with a gun and not by beating him on the head, but emptying four shells into him. So that's the point I think what we're trying to make is the evidence is overwhelming and it was found as the basis for another count of conviction. It would not be a miscarriage of justice to use that evidence to support a ten-year sentence on 924C. Thank you. Thank you, Your Honors. Mr. Eberhardt, you've got a couple of minutes. And very briefly, going back to the wiretap issue, I think where I've gotten off track a little bit is bringing to the Court's attention that we're dealing with the contemporaneous actions. And that's the significant part of defining interception. And I would draw the Court's attention to the Turk case again, which is really the foundation for the argument. In Turk, in identifying what the Senate and the core concerns intended in relation to interception, the Turk opinion specifically states that the Senate notes related to oral acquisition indicates that it's the act of surveillance and not the oral acquisition, i.e., the hearing, which might be contemporaneous with the surveillance, that it's the center of the congressional concern. And that's where here we raise the issue that we've got a clear divide. And when that 4G and the 5G data is directed out of jurisdiction process, so it's sort of put in recordable or listening form and then sent back, that's where the acquisition occurs. I would cede the rest of my time unless the panel has specific questions. Thank you, Mr. Eberhardt. Judge, I'd like to briefly address the argument raised about Julian. And I think the one thing that we know Julian holds is that it had to determine whether 924J was a separate offense from 924C. And that is that it is a separate offense. The cumulative punishment issue in 924C does not apply to 924J. And that by itself means that there is no double jeopardy issue between imposing a sentence on a 924J and a 924C. Because every court that has considered it says that 924C must run consecutive to everything. There is no double jeopardy issue to arise. And to get to Judge Brasher's question, I do think that the way that the district court did this was to the detriment of Mr. Chambers. Because in allowing the vicar to stand as opposed to merging it with the 924J, as the district court initially wanted to do, the district court had no option but to impose a life sentence. And that changes how this hearing could have gone because the attorney couldn't argue for less than life. Sure, he could have argued for just one life sentence. But in our system, that doesn't really make a difference. And so if he had the opportunity to argue for less than life, that would have changed everything. Here's the question about that, though. I mean, so the district court merged in a way that sort of imposed the higher sentence. What basis is there for us to say the district court erred in doing that if there is a double jeopardy issue? If this court said—I want to make sure I understand. If this court says there is a double jeopardy issue between imposing a sentence on 924C and 924J, then the court couldn't do the first option and not vacate two sentences. So then I think—the problem is I don't think the court was able to really consider that. I think the court was afraid of giving Mr. Chambers a benefit and vacating two convictions and then making it easier to possibly attack one on appeal. I guess what I'm trying to figure out here, and maybe I'm not phrasing this correctly, but the district court identified this issue. Sort of everybody said there's an issue here. Everyone agrees there's like a sort of a higher level double jeopardy issue. And then sort of what to do about that is the question that was presented to the district court. What's the error in the district court resolving that sort of, I guess you could say, the district court did it? I think because of the way the record is, it's kind of silent on whether the court was able to really exercise that discretion. Because I think it wasn't fully able to say I can leave intact the 924C with the 924J. It was only looking at the government's argument and saying, well, if I give him to it this way, I'm going to vacate two convictions and give him sort of a landfall victory. I mean, he still could have given a life sentence, obviously, but there's two convictions now that he's not being sentenced for that the jury found him guilty of. Thank you, Your Honor. Well, Mr. Eberhardt, I note that you were court appointed, and I want to thank you for accepting the appointment and discharging your responsibility today. Thank you. We're going to move to the next case.